UNITED AIRLINES/AFA SYSTEM BOARD OF ADJUSTMENT

| | |
|---|---|
| IN THE MATTER OF<br>ARBITRATION BETWEEN:<br><br>ASSOCIATION OF FLIGHT ATTENDANTS,<br>COMMUNICATIONS WORKERS OF AMERICA,<br>AFL-CIO<br><br>AND<br><br>UNITED AIRLINES | GRIEVANT: NASEEM ASHRAF<br><br>ISSUE: TERMINATION<br><br>AFA CASE NO. 55-64-01-401456-15<br><br>ARB. CASE NO. 19-83 |

Location of Hearing: Veritext Chicago
                       1 N. Franklin St. #3000
                       Chicago, Illinois

Date of Hearing:    February 26, 2019

Date Post-Hearing Briefs Exchanged: April 26, 2019

Date of Award: June 6, 2019

Appearances:

                For Grievant: S. Scott Boyd, Patterson Boyd

                For UAL: Eric E. Mennel, Director of Labor Relations

Before a 3-Member Board:  Steven M. Bierig, Chairperson
                               Christian K. Hertneky, Association Member
                                 Jessica Kimbrough, Company Member

1

**AWARD**

**For the reasons stated in this Opinion and Award, this Board finds:**

**The Grievance is denied. The Company did have just cause to terminate Grievant for his actions of July 22, 2015.**


_____
**Steven M. Bierig, Arbitrator**
**June 6, 2019**



**Association Board Member:**                    **Company Board Member:**



_____                    _____
**Christian K. Hertneky**                         **Jessica Kimbrough**



_____   _____                    _____    _____
**Consent   Dissent**                         **Consent        Dissent**

I. **INTRODUCTION**

The Hearing in this matter took place on Tuesday, February 26, 2019 at Veritext Chicago, located at 1 N. Franklin St., #3000 in Chicago, Illinois. The Hearing commenced at 9:00 a.m. and took place before the undersigned Arbitrator who was selected to render a final and binding decision in this matter. At the Hearing, the parties were afforded a full opportunity to present such evidence and arguments as desired, including examination and cross-examination of all witnesses. A 194-page transcript of the Hearing was prepared. The parties prepared Post-Hearing Briefs that were exchanged through the Arbitrator on or about April 20, 2019, at which time the evidentiary portion of the Hearing was declared closed. I note that Grievant was represented by his own counsel in this matter.

II. **ISSUE**

Did the Company have just cause for the Termination of Grievant Naseem Ashraf?

If not, what is the appropriate remedy?

(Tr. 8)

III. **CONTRACT PROVISIONS AND COMPANY POLICIES**

A. **Contract**

Section 1 (C)

...The Company will have the right to discharge or otherwise discipline employees for just cause subject to the appeal procedure provided herein.

**B.**    **Working Together Guidelines**

 **Personal Conduct-Company Property:**  Removal or borrowing of company property is not permitted without specific supervisor permission. The removal of customer service items, food or beverages from the aircraft is strictly prohibited.

\*                        \*                        \*                        \*

**Working Together Expectation-Honesty** Protect property resources of United and fellow team members, customers and others against theft, damage or misuse. Refrain from inappropriate use or possession of company property.

\*                        \*                        \*                        \*

**Flight attendant Carrying Alcohol F**light attendants may carry alcohol, including beer and wine, in their luggage while working and on company property in its original container.[1]

\*                        \*                        \*                        \*

**Responsibility :** Use good judgment and open communication in all decisions.

\*                        \*                        \*                        \*

(Jt. Ex. 6)

**IV.**    **STATEMENT OF FACTS**

**A.**    **Introduction**

The instant case involves a dispute between United Airlines ("United" or the "Company") and the

Association of Flight Attendants, CWA, AFL-CIO (the "AFA" or the "Union"). The Union contends that the

Company did not have just cause to terminate Grievant Naseem Ashraf ("Grievant") as a result of events

---

[1] On May 22, 2014, this Policy was clarified to include the fact that the original alcohol container must be sealed. However, this fact was not identified in the Termination letter of August 20, 2015.

4

that occurred on Flight #4 on July 22, 2015. The parties' relationship is regulated by the 2012-2016 Collective Bargaining Agreement (the "Contract"). (Jt. Ex. 1, 2)

### B.    Background and Company Procedures

Grievant was a United Flight Attendant based at Houston Intercontinental airport ("IAH"). At the time of his Termination on August 19, 2015, Grievant had been employed by United as a Flight Attendant for approximately 17 years. There is no evidence that prior to the instant incident, Grievant had any discipline on his record. (Jt. Ex. 2; Tr. 10)

In 2014, United Inflight Management wanted to address a concern that Flight Attendants were pouring alcohol from various alcohol containers on the aircraft into personal containers, and removing them from the aircraft. The Company drafted a Policy in May 2014 that initially prohibited Flight Attendants from carrying any alcohol on work trips. Shortly thereafter, pursuant to discussions with the Union, the Company amended the Policy to permit Flight Attendants to carry alcohol on work trips as long as the alcohol was in its original container. On May 22, 2014, United issued a revised Policy requiring that alcohol carried by Flight Attendants on work trips must be in its original, "sealed" container. United's Inflight Division enacted the Policy to try to deter theft by Flight Attendants. The Company publicized the Policy by publishing it in the weekly bulletin distributed to Flight Attendants and by emailing the Policy to Flight Attendants via the Company's internal system. (Er. Ex. 3; Tr. 62, 65-67, 70-75, 94, 139-140)

### C.    The Events Leading to Grievant's Termination

On July 21, 2015, Grievant began a 3-day trip from IAH to London Heathrow ("LHR"). After the flight landed on the morning of July 22, the crew boarded a bus to clear customs. Ordinarily, after clearing customs, crew buses proceed to the layover hotel. However, on July 22, British customs officials decided

to search the crew, and detained Grievant and one other Flight Attendant whom they suspected had property that belonged to United. The police transported the two Flight Attendants to the local police station. Police found a water bottle full of a yellowish liquid, a can of Coca-Cola, two cans of Seagram's Club Soda and various snack food items in Grievant's possession.[2] British Police arrested Grievant on suspicion of theft, and advised United's Regional Security Manager Alan Marchetti of the incident. Marchetti reviewed and photographed the items found in Grievant's bag. Marchetti forwarded the photographs to his counterparts at IAH for investigation. (Jt. Ex. 2, Er. Ex. 1, 2, 7; Tr. 35-36, 40-48)

On August 4, 2015, a meeting was held regarding Grievant's alleged violation. In attendance were Operations Manager Sabrina Clark and other Company officials from the IAH Inflight office, Union Representatives, and Grievant. Prior to the meeting, the Company presented Grievant with relevant documents in its possession. One of the documents was an email that specified that the three cans of sodas found in Grievant's bag were purchased by United, as indicated by batch numbers and bar codes. (Tr. 120, 123-124)

During the August 4 meeting, after reviewing the Company's evidence, Grievant stated that he brought the three cans of soda from home for consumption after the flight during dinner at the layover hotel, and stored them in the aircraft's "chiller" during the flight. The chiller is designed to chill various items on a flight. Company Investigators sought clarification as to why Grievant would store his personal sodas in the aircraft's chiller. Grievant first indicated that the sodas were with his lunch pail in the chiller. Later in the meeting, Grievant said that the sodas were separate from his lunch pail in the chiller. Grievant stated that his sodas must have gotten confused with sodas owned by United and Grievant mistakenly removed United's sodas from the aircraft. (Tr. 123-124,127)

---

[2] I note that the Company did not pursue the issue of the food items as a basis for the determination to terminate Grievant.

6

Clark testified that she did not believe Grievant's explanation. First, there would be no reason for Grievant to have removed his sodas from his luggage to cool them in the chiller during the flight if he did not plan to consume them until he reached the layover hotel. Clark indicated that as the flight landed early in the day, by the time that Grievant consumed his dinner, the sodas would be warm. Further, there was no evidence that cooling devices, such as ice or a refrigerator were not available at the layover hotel. Second, Clark testified that United's sodas are not stored in the chiller. Both Clark and Director of Labor Relations-Flight Robert Krabbe testified that sodas are kept in the soda cart. Grievant acknowledged that the yellowish liquid in the water bottle was scotch whiskey that he brought from home. (Tr. 122, 125-127)

The Company held another meeting with Grievant and Union Representatives on August 17, 2015. Clark again asked Grievant to explain how and why he stored sodas in the chiller on the flight to LHR. According to Clark, Grievant's rendition of the incident was different from that of the meeting of August 4. Clark testified that Grievant now stated that the sodas had originally been in his suitcase and that he removed them from the suitcase later in the flight and placed them in the chiller. Grievant said nothing during the August 17 meeting to lead Clark to now believe Grievant's explanation regarding the sodas. (Tr. 124, 135-138, 140)

During the August 17 meeting, Clark also addressed Grievant's violation of the Container Policy, in that Grievant carried the water bottle containing scotch that was not in its original, sealed container. Grievant admitted that he had violated that Policy, but claimed that he was unaware of the Policy. Clark determined that Grievant violated United Policy when he was found, on a work trip, to be in possession of alcohol that was not in its original, sealed container. (Er. Ex. 7; Tr. 142-144)

According to the testimony of Clark and Krabbe, United maintains a zero-tolerance policy for employees who steal United property, regardless of the value. Pursuant to the events outlined above, Clark consulted with the Company's Labor Relations and Legal Departments, and it was determined that

Grievant would be terminated. Clark terminated Grievant's employment on August 19, 2015. (Jt. Ex. 1; Er.

Ex. 3, 7; Tr. 35, 86, 94-96, 143-144)

The Termination letter indicated as follows:

> You admitted to removing Company property from the aircraft although you claimed it was not intentional. Your explanation of how Company property ended up in your personal luggage was not plausible. Your failure to follow company guidelines and expectations is unacceptable and cannot be tolerated. The Company policy requires that flight attendants carry alcohol in its original container for the very reason presented here. Although you claim you were not aware of this policy flight attendants are required to be familiar with and follow all policies in the P & P manual.
>
> The Company has considered your overall work record, length, and the seriousness of the infractions. Theft is one of the most serious violations of Company rules. Flight attendants work in a largely unsupervised environment and we must be able to trust them. Moreover, your failure to take any responsibility for your serious conduct violations suggests you are not truly remorseful for your actions. For these reasons, as well as the potential fines and egregious negative impact on the Company your employment was terminated effective August 19, 2015.

I note that Grievant did not testify, nor did Grievant present any witnesses. The Union filed a

timely Grievance, alleging that the Company was not justified in terminating Grievant. The Grievance

proceeded to Hearing before the System Board of Adjustment on February 26, 2019.

## V. POSITIONS OF THE PARTIES

### A. The Company

The Company contends that it had just cause to terminate Grievant. Grievant violated Company

Policy when he took three cans of soda from the aircraft and carried alcohol onboard that was not in its

original, sealed container. The Company contends that it had just cause to terminate Grievant.

The Company contends that its Policy of terminating Flight Attendants who commit theft from an aircraft is consistent and well-known. Further, the Company has a clear Policy requiring Flight Attendants who choose to carry alcohol on flights do so in an original, sealed container.

The Company contends that it proved that Grievant removed the three sodas from the aircraft. Grievant's explanation for how he came to possess Company property changed over the course of the investigation and did not make sense. The Company also proved that Grievant violated its Container Policy. The Company contends that either violation is grounds for Termination. Grievant chose not to testify, and the Company contends that Grievant's failure to testify must be held against him.

British customs officials found Grievant carrying three sodas as well as a water bottle of scotch. Grievant told the Company that he had brought the sodas from home. But when informed that the sodas belonged to the Company, Grievant changed his explanation, stating that he confused his sodas with those belonging to the Company in the chiller. Based on the evidence, the Company determined the story was illogical and determined Grievant had  stolen Company property.

Further, Grievant claimed he had brought the water bottle filled with scotch from home. The Company adopted a Policy that prohibits Flight Attendants from carrying alcohol on trips in any container other than its original, sealed container.

The Company contends that it has proven that the sodas in Grievant's bag were Company property removed from the aircraft. During its investigation, the Company showed Grievant its evidence that the batch numbers and bar codes on the sodas matched those in the Company's inventory. The Company contends that once it established possession of Company property, the burden shifted to Grievant to prove that his possession of the property was an honest and inadvertent mistake. Grievant chose not to testify to clarify his claims about how he confused his property with that of the Company.

 Grievant changed his story over time. At the August 4 meeting, Grievant initially indicated that the sodas were with his lunch pail in the chiller. Later in the same meeting, Grievant corrected himself and

stated that the sodas were apart from the lunch pail in the chiller. At the second meeting on August 17, Grievant changed the story again and claimed the sodas were in his suitcase for much of the flight before he removed them and put them into the chiller.

The Company contends that while the story changed, it also defied common sense. Grievant claimed that he put his sodas into the chiller because he wanted them to be cold when he consumed them with dinner later in the evening at the layover hotel. However, the flight landed early in the morning at LHR and Grievant would not have consumed them until many hours later in the evening. Further, Grievant's explanation was inconsistent with the manner in which the Company stores sodas on flights. Grievant claimed that he had confused his sodas with those of the Company in the chiller. However, the Company does not store sodas in chillers, as Clark testified.

In *United Airlines and AFA, DCA 28-14* (Grievant: Prashant Thakker) (Klein, Arb. 2017), the grievant claimed that he bought a bottle of red wine and a bottle of champagne at the Dubai airport before working a flight to Washington Dulles. The grievant in that case claimed that he purchased these items to take to a brunch in Miami hours after his arrival at Dulles. The grievant indicated that he took the wine and champagne out of his bag and placed them in the ice cream cart to cool them on the flight. The grievant stated that he then confused his wine and champagne with those of the Company when he removed them from the aircraft at the end of the flight. In that case, the Company stressed the unreasonableness that grievant would take his wines from his bag to place them in the chiller when they would certainly be warm by the time he reached Miami. The Arbitrator did not accept Thakker's explanations and upheld the Discharge.

Once the Company establishes that the property taken belonged to the Company, the burden shifts to Grievant to establish that he possessed the sodas by mistake. Grievant declined to testify and to provide the Board with the opportunity to hear his side of the story. The Board has previously held that it draws an adverse inference against grievants who do not testify when the Company has established a

*prima facie* factual case of dischargeable misconduct. *United Airlines and AFA, ORD 64-07* (Grievant: Bremer) (Goldstein, Arb. 2011). In the instant case, Grievant similarly failed not only to refute the Company's case but also to explain his own earlier admission that the sodas belonged to the Company.

In addition to Grievant's theft of the sodas, the Company proved that Grievant violated Company Policy when he left the aircraft carrying a water bottle filled with scotch. United adopted the Policy to handle situations in which Flight Attendants poured Company-owned wine and liquor into other containers and removed them from the aircraft. Management had a legitimate reason to adopt the Policy.

The Company drafted a Policy in May 2014 that initially prohibited Flight Attendants from carrying any alcohol on work trips. Pursuant to discussions with the Union, the Company amended the Policy to permit Flight Attendants to carry alcohol on work trips as long as the alcohol was in its original, sealed container. After its adoption, the Company disseminated the Policy. Although Grievant denied knowledge of the Policy during the investigation, Flight Attendants are responsible for knowing the Company's Policies and Procedures.

The Company has established by clear and convincing evidence that Grievant intentionally removed sodas from the aircraft and carried alcohol off the aircraft in a water bottle. The Company's Working Together Guidelines specifically prohibit theft, which is recognized as a terminable offense. Grievant's violation of the Policy on carrying alcohol is just as serious. Any violation of this Policy is tantamount to theft. The Board should uphold Grievant's Termination for either or both offenses.

The Company presented evidence at the Hearing that it has consistently terminated employees who steal from the Company. The Company has zero tolerance for theft. The Company's three witnesses testified that Flight Attendants who steal from the Company are terminated. In *United Airlines and AFA, LAX 8-88* (Grievant: Esposito) (Dunsford, Arb. 1988), Arbitrator Dunsford noted, "… the taking of even a small amount of property tends to destroy the relationship of trust which is essential between the employee and management." *Id.* at pp. 16-17. In *Esposito,* the grievant's suitcase contained four packages

11

of peanuts and four packages of shortbread cookies, which were the property of the Company. The Board upheld his Termination because the grievant did not convince the Board that his possession of the items was inadvertent.

Thus, the Company contends it had just cause to terminate Grievant. Therefore, the Company requests that the Board uphold the Termination and deny the Grievance.

B. **Grievant**

Grievant contends that the Company did not have just cause to terminate Grievant. The Company has the burden that just cause exists to support the Company's Termination of Grievant. Grievant asserts that the Company has failed to meet its burden of proof in this matter.

Grievant had no prior notice that violating the Container Policy was grounds for immediate Termination. Grievant also contends that Termination is an excessive punishment, the Policy is not related to preventing theft, and the Company's investigation was not fair and objective. As to the question of theft, Grievant contends that there is no evidence that the sodas were Company property. Further, the evidence shows that the investigation was neither fair nor objective.

Regarding the Container Policy, theft is not an issue as it relates to Grievant's alleged violation of the Container Policy. The Company cannot prove that Grievant removed the Company's scotch or water bottle. The Company did not provide Grievant with notice he could be immediately terminated for violating the Container Policy. Grievant contends that the Container Policy is not reasonably related to the Company's goal of preventing theft. Grievant contends that an employer lacks just cause to terminate an employee who was not previously warned that a violation could lead to immediate Termination.

The Contract also places a duty on the Company to exercise its disciplinary authority to correct rather than punish an employee. The Company's Policies & Procedures Manual specifically outlines a progressive discipline track. While the Policies allow the Company to escalate the discipline, it may only

12

do so in severe circumstances. The Company is not free to terminate an employee when lesser forms of discipline are more appropriate. At the Arbitration, the Company presented no evidence that it has ever advised Flight Attendants, including Grievant, that immediate Termination is the punishment for violating the Container Policy. While Grievant agrees he is responsible for following all Policies, he contends that he could not have deliberately violated a Policy of which he was not aware.

A Flight Attendant's decision to bring a small quantity of alcohol from home, within the limits of customs regulations, is not a serious matter. An employee has an incentive to bring alcohol from home for consumption after work to avoid the cost of purchasing alcohol at the flight's destination. The Policy does not indicate that a single violation could lead to immediate Termination. Therefore, there was no just cause to terminate Grievant for the Container Policy violation.

Even if the Board were to find that the Company warned Grievant that he could be terminated for violating the Container Policy, just cause requires to be reasonable. The Company will no doubt argue that Flight Attendants are generally unsupervised, and theft of beverages is a real concern. However, in the instant case, there is no evidence of theft. Under progressive discipline standards, lesser forms of discipline were available and more appropriate in this case. These lesser forms of discipline would have put Grievant on notice of the Container Policy and would have been a reasonable deterrent to future violations of the Policy.

Grievant also contends that the Container Policy is not reasonably related to the Company's goal of deterring theft. The Container Policy was created to ensure that Flight Attendants carry alcohol only in original containers. However, the Policy does not reasonably relate to the issue of theft. According to Grievant, rather than simply keeping track of its alcohol by tracking the bottles and passenger consumption, the Company used an overbroad approach and banned all Flight Attendants from carrying alcohol unless in original, sealed containers. Therefore, the Board should find no just cause for terminating an employee for violating the Container Policy.

13

While Grievant acknowledged violating the letter of the Policy, he denied intentionally violating the Container Policy. There was no investigation into Grievant's water bottle or its contents and whether Grievant deliberately violated the Policy. Instead, the Company simply dismissed Grievant's statements as untrue. The Company did not interview Grievant's Supervisor or interview any co-workers to determine if Grievant had actual knowledge of the Container Policy. The lack of any investigation concerning the Container Policy violation is a sufficient basis for the Board to sustain the Grievance.

Regarding the charge of theft, the Company must prove that Grievant removed Company property from the aircraft, and second, that the investigation was fair. The fundamental question is whether the soda cans found in Grievant's luggage were Company property. The Company took the position from the beginning of its investigation that the sodas belonged to the Company. Despite not proving ownership at the Arbitration Hearing, Clark testified that the Catering Department had an invoice with batch numbers that allowed them to trace the specific cans found in Grievant's luggage; said invoice was never produced as evidence. The Arbitrator only admitted testimony regarding ownership of the soda cans for the limited purpose of showing the Company's investigation efforts, not ownership.

There is no evidence from Catering that the specific cans were purchased by the Company. When asked if Grievant's soda cans were on Flight #4, the Company's Catering Department responded by email that soda cans, generally, were on all international flights, including Flight #4. Obviously the specific cans could not have been on all international flights. The Catering Department's email does not meet the Company's burden of proof that it owned the sodas, and certainly should not have led Company Investigators to unequivocally represent to Grievant that the cans belonged to the Company.

In prior cases, the Company usually satisfied its burden of proving ownership through the Flight Attendant's admission that the beverage removed from the aircraft was the Company's property. Despite the fact the Company could not trace the specific cans, the Company's  interview of Grievant on August 4, 2015 included the statement that the cans were confirmed to be property of the Company. Without

14

sufficient evidence that the three soda cans belonged to the Company, there can be no finding that Grievant removed Company property in violation of the Policy.

The Company must also provide evidence that its investigation was fair and reasonable. The Company's procedures require the Flight Attendant's immediate Supervisor to investigate the allegations. However, in this case, Grievant's Supervisor had been transferred to a different position, and Clark, the person who would ultimately decide Grievant's discipline, conducted the investigation. Clark's dual role in the case as both Investigator and decision-maker is improper and conclusive evidence of an unfair investigation.

The Company's investigation was seriously incomplete. Clark testified she did not believe Grievant's testimony about bringing sodas and liquor from home; therefore, she did not find it necessary to investigate his statements. There was no investigation as to the source of the water bottle or whether it matched the brand and size of water bottles served on Flight #4; there was no investigation into the contents of the water bottle and whether the alcohol was served on Flight #4. There were no interviews of any other employees, co-workers, or Supervisors who might have seen Grievant with beverages.

Not only was the Company's investigation incomplete, but it was also based on unsubstantiated statements of fact presented to Grievant as true. The Company could not confirm that it purchased the specific cans of soda found in Grievant's luggage, yet the Company misled Grievant in an effort to get him to admit to the offense of theft. When Grievant struggled to explain his possession of the Company's soda cans, the Company used his inability to explain as further proof of his guilt. It is not surprising that Grievant appeared deceptive trying to explain how the Company's sodas ended up in his luggage when the only plausible explanation was that the sodas belonged to Grievant.

Grievant contends that the burden of proof that must be met by the Company is that of clear and convincing evidence. The required level of evidence is missing from this case as it relates to the sodas. The Company's decision rests solely on an inadequate presumption of guilt.

Grievant asks that the Grievance be sustained, and that Grievant be reinstated and made whole.

## VI.  DISCUSSION AND FINDINGS

### A.  Introduction

After a complete and thorough review of all the evidence and arguments presented in this case, I find that the Company did have just cause to terminate Grievant as a result of his actions of July 22, 2015 during and after Flight #4. In spite of his 17-year tenure with the Company, I find that Grievant's behavior was sufficiently egregious as to warrant Termination.

### B.  Discussion

On July 21, 2015, Grievant began a 3-day trip on Flight #4 from IAH to LHR. After arrival at LHR on July 22, British customs officials  searched the crew, and detained Grievant and one other Flight Attendant whom customs officials suspected had property that belonged to the Company. After being escorted to the Police Station, the Police found a water bottle full of a yellowish liquid, a can of Coca-Cola, two cans of Seagram's Club Soda and various snack food items in Grievant's possession. British Police advised Manager Alan Marchetti of the incident. Marchetti reviewed and photographed the items found in Grievant's bag.

On August 4, 2015, a meeting was held regarding Grievant's alleged violation. Grievant stated that he brought the three cans of soda from home for consumption after the flight during dinner at the layover hotel, and stored them in the aircraft's chiller during the flight. Grievant first indicated that the sodas were with his lunch pail in the chiller. Later in the meeting, Grievant said that the sodas were separate from his lunch pail in the chiller. Grievant stated that his sodas must have gotten confused with sodas owned by the Company, and Grievant mistakenly removed United's sodas from the aircraft.

Clark did not believe Grievant's explanation. First, there would be no reason for Grievant to have removed his sodas from his luggage to cool them in the chiller during the flight if he did not plan to consume them until he reached the layover hotel. Second, Clark testified that sodas are not stored in the chiller. Sodas are kept in the soda cart. Grievant acknowledged that the yellowish liquid in the water bottle was scotch whiskey that he brought from home.

The Company held another meeting with Grievant and Union Representatives on August 17, 2015. According to Clark, Grievant's rendition of the incident was different from that of the meeting of August 4. Clark testified that Grievant now stated that the sodas had originally been in his suitcase and that he removed them from the suitcase later in the flight and placed them in the chiller. During the August 17 meeting, Clark also addressed Grievant's violation of the Container Policy. Grievant admitted that he had violated that Policy, but claimed that he was unaware of the Policy.

Pursuant to the events outlined above, Clark consulted with the Company's Labor Relations and Legal Departments, and it was determined that Grievant would be terminated. Clark terminated Grievant's employment on August 19, 2015.

Essentially, the facts of this case involve the questions of whether Grievant violated the Container Policy and took Company property off of Flight #4, and if so, whether Termination was an appropriate penalty. I note that Grievant has argued that the burden of proof in this case is on the Company, and I agree. However, I disagree with Grievant's contention that the standard to be applied in this case is that of "clear and convincing" evidence. I have repeatedly held that in an industrial context, the burden of proof is that of "preponderance" of the evidence. Labor Arbitrations are not criminal matters and as such, are not subject to those higher standards.

I shall first address the Container Policy issue. I note that the Container Policy is relatively clear. It indicates that an employee who wishes to bring alcohol onto a flight may do so only if the alcohol is in its original container. I note that the word "sealed" was added in May 2014, over a year prior to the instant

incident. While I do find that the documents presented to Grievant during the investigatory process did not include the word "sealed", I do not find this error to be determinative in the instant case. It is clear and unrebutted that Grievant did bring a water bottle filled with scotch onto the aircraft. Grievant does not deny doing so. Therefore, Grievant violated the plain language of the Container Policy.

Grievant contends that the Container Policy is not reasonably related to its intent in trying to avoid theft. I disagree. Krabbe and Clark both testified that the purpose of the Container Policy is to prevent employees from taking Company-owned alcohol off of flights. The requirement that all alcohol brought onto a flight by an employee be in its original container enhances the Company's ability to deter theft. While Grievant's suggestion that every bottle of alcohol be tracked to deter theft is a good idea in theory, the Company's approach is reasonable as well. While it may not be the absolute optimal solution, I cannot find that the Container Policy is unreasonable.  I find that it does work to deter theft of alcohol from the Company's aircraft.

As for the investigation, I cannot fault the Company in this matter. Grievant clearly brought alcohol in a container other than its original one onto Flight #4. Grievant's action is therefore a violation of the Container Policy. While Grievant claims that he was unaware of the Policy, the evidence presented by the Company shows that the Company took reasonable steps to identify and promulgate said Policy. I certainly realize that the Company has a myriad of policies to which Flight Attendants must adhere; however, it is not an unreasonable expectation for employees to be aware of all of their employer's rules and policies. In this case, I find that Grievant knew, or reasonably should have known about the Container Policy. I find that Grievant's action of bringing scotch onto the aircraft in a water bottle was a violation of the Container Policy.

Next, I must deal with the allegations that Grievant took three cans of sodas from Flight #4. It is clear that the Company has a reasonable Rule that employees, including Flight Attendants, may not remove Company property from an aircraft. It is a fundamental concept that an employee may not steal

18

from his/her employer. As noted by both parties, the burden of proof in this case is on the Company to prove that Grievant did remove the sodas from the aircraft.

As I indicated at the Arbitration, based on the evidence, I could not find that the Company could meet its burden to prove that the cans of soda were the Company's property via the means of batch numbers and bar codes. However, that determination does not end the inquiry. When customs officials inspected his bag, Grievant was found to have three cans of soda in his possession. These cans were identical to those that are used on the flight that Grievant had just worked. The Company is correct that once it proves that the cans belong to the Company, the burden then shifts to Grievant to prove that the possession of the property was inadvertent.

Because I cannot find that the Company's attempt to prove that the cans belonged to the Company was accomplished via its batch numbers and bar code evidence, the burden cannot yet shift to Grievant to show that he inadvertently removed the cans from the aircraft. Thus, the Company, to be successful, must continue to attempt to prove by other means that the cans belonged to the Company. I note that it attempted to meet this burden based on Grievant's behavior.

The evidence on this front begins with the fact that the cans were found in Grievant's bag after leaving the airport. It is clear that the cans were of the same type that were supplied to the aircraft. When questioned, Grievant presented differing explanations of his possession of the cans. I note that at one point, the Company's Representatives informed Grievant that the cans belonged to the Company based on the batch numbers and bar codes. I find that the Company acted in good faith when making this representation. The fact that this was not ultimately proven does not undermine the Company's case. Based on this statement by the Company, Grievant responded that his cans had been mistakenly confused with Company cans in the chiller. As noted below, I have found that Grievant's explanations undermine his claim of ownership of the cans.

19

It is of some concern that Grievant's explanations of why he had the cans shifted. Grievant indicated consistently that he had placed the cans into the aircraft's chiller. Grievant first indicated that the sodas were in his lunch pail in the chiller. However, later in the same meeting, he said that the sodas were separate from his lunch pail in the chiller. Approximately two weeks later, in  an investigative meeting, Grievant indicated that the sodas had originally been in his suitcase and that he removed them from the suitcase later in the flight and placed them in the chiller. While these varying explanations are not dramatically different, they do raise concerns.

Grievant told the Company that his sodas must have gotten confused with the sodas owned by the Company while in the chiller. However, the Company contends that Company sodas are never kept in the chiller. Grievant indicated that he wanted to chill the drinks so he could consume them with his dinner that evening. The Company did not believe Grievant for a number of reasons. First, the Company contends that cans of soda are never kept in the chiller and therefore, there could have been no mix-up with Company-owned cans in the chiller. The Company presented evidence to show that beverage cans are kept on the beverage cart and not on the chiller. Second, Flight #4 landed early in the morning and Grievant claimed that he wanted to chill the cans for consumption that evening in the hotel. By dinnertime, the cans would have become warm. Further, it is reasonable to presume that the hotel would have ice to chill the can, and/or available refrigeration.

Effectively, the Company has provided circumstantial evidence to show that the cans were those owned by the Company and were removed from the aircraft by Grievant. The evidence is uncontested that the cans found on Grievant's person were of the same type that the Company used on the flight. Further, Grievant presented shifting explanations of why the cans were in his bag, and the explanations did not make logical sense. Finally, as the Company argues, Grievant did not testify at the Hearing. He relied on evidence obtained during the investigation to prove his innocence. I note that Grievant had the opportunity to present his side of the story at the Arbitration, but failed to do so. While it is certainly his

right to not testify, his failure to do so prevented him from successfully rebutting the Company's evidence. I find that the Company has presented credible circumstantial evidence to prove, by a preponderance of the evidence, that Grievant removed the Company's property from Flight #4. Further, I cannot find that once the Company proved that the cans were owned by the Company, Grievant was unable to prove that his possession of the cans was inadvertent.  Therefore, I find that Grievant did engage in the theft of cans of soda from the aircraft.

I note that while I have found that the Company did meet its burden of proof, I find that the investigation by the Company was not as thorough as it could have been. I note that regarding the theft of the sodas, the Company did not interview other Flight Attendants on the flight to determine whether they were aware of any relevant facts or whether they observed Grievant's actions. I find that this would have been helpful. However, in the instant case, the Company was successfully able to prove that the cans were taken by Grievant and the failure to interview other employees does not change that result.

Having determined that Grievant violated the Container Policy and engaged in the theft of the three soda cans, I must next determine if the penalty of Termination was unreasonable. Grievant is correct that the Company does have a progressive discipline policy. It is also clear that the Company may bypass progressive discipline steps in the event of serious transgressions.

I have carefully considered the evidence in this case. I note that Grievant is a 17-year employee with no apparent prior discipline. In the instant case, Grievant took three cans of soda from an aircraft and violated the Container Policy. I note that the Company has argued that the violation of either of these Policies should lead to Termination. I find that I need not reach the question of whether the penalty for violating the Container Rule should lead to Termination.

The theft of the three soda cans is sufficient for Termination. While the monetary value of the sodas is extremely small and Grievant's record with the Company is excellent, theft from an employer is a fundamental concept. That rule is absolute. In this case, I find that by taking the three cans of soda from

the aircraft, Grievant violated the fundamental rule that an employee cannot steal. While the penalty is clearly harsh, based on the instant violation, I have no choice but to uphold the discipline imposed.

Because I have found that Grievant took three sodas from the aircraft, I need not reach the question of whether a violation of the Container Rule should also lead to Termination.

Therefore, I find that the Company acted properly in terminating Grievant. The Grievance is denied.

**VII.   <u>AWARD</u>**

**For the reasons stated in this Opinion and Award, this Board finds:**

**The Grievance is denied. The Company did have just cause to terminate Grievant for his actions of July 22, 2015.**


_____
**Steven M. Bierig, Arbitrator**
**June 6, 2019**




<u>**Association Board Member**</u>**:**                 <u>**Company Board Member**</u>**:**



_____                 _____
**Christian K. Hertneky**                         **Jessica Kimbrough**



_____   _____                 _____   _____
**Consent    Dissent**                         **Consent         Dissent**


23